IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JENNIFER OLDHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE PENNSYLVANIA STATE | ) | |
| UNIVERSITY; CHRISTOPHER J. | ) | 1:20-cv-466 |
| HARRIS, as agent for Penn | ) | |
| State in his official | ) | |
| capacity; WIESLAW R. GLON, in | ) | |
| his official and individual | ) | |
| capacities; and GEORGE G. | ) | |
| ABASHIDZE, in his official and | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This case arises from an alleged sexual assault committed on a cross-country flight by an employee of the athletic department of Pennsylvania State University. Before the court are three motions: Defendant Wieslaw R. Glon's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), (6), and 28 U.S.C. § 1406, or in the alternative, to transfer pursuant to 28 U.S.C. § 1404 (Doc. 22); Defendants Pennsylvania State University ("Penn State") and Christopher J. Harris's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6), or in the alternative, to transfer pursuant to 28 U.S.C. § 1404(a) (Doc. 24); and Defendant George G. Abashidze's motion to dismiss pursuant

to Federal Rule of Civil Procedure 12(b)(2) (Doc. 31). For the reasons set forth below, the motions to transfer will be granted and the case will be transferred to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1406(a) and § 1404(a), rendering the motions to dismiss moot.

## I. BACKGROUND

The basic facts alleged in the complaint, as relevant to the motions before the court, are as follows:

Plaintiff Jennifer Oldham, a resident of Durham County, North Carolina, is the owner and Head Coach of Mid-South Fencers' Club, a private fencing club. (Doc. 1 ¶ 11.) Defendant Penn State is an independently-governed university associated with Pennsylvania's Commonwealth System of Higher Education. (Id. ¶ 12.) Defendant Harris is Penn State's Title IX Coordinator. (Id. ¶ 13.) Defendant Glon is the Head Coach of Penn State's fencing team, and Defendant Abashidze was an Assistant Coach. (Id. ¶¶ 14, 15.) All three individually-named Defendants in this action are residents of Centre County, Pennsylvania.[1] (Id. ¶¶ 13-15.)

On December 12, 2017, Oldham was seated next to Abashidze on a flight from Portland, Oregon to Chicago O'Hare Airport. (Id. ¶¶ 1, 6.) Both Oldham and Abashidze were returning from a USA Fencing

---

[1] Although Oldham asserts that Abashidze lives in Ohio as of August 17, 2020 (Doc. 27 at 27), Abashidze himself confirmed on September 4, 2020 that, as the complaint alleges, he resides in Pennsylvania (see Doc. 32 at 2).

2

North American Cup tournament, which they had each attended in their capacity as coaches. (Id. ¶¶ 7, 8.) During the course of the flight, Abashidze made numerous, unwelcome lewd comments to Oldham, touched her legs, arms, and face without her consent, and repeatedly demanded that she engage in sexual relations with him. (Id. ¶ 2.) Somewhere over the Great Plains, Abashidze thrust his hand between Oldham's legs and sexually assaulted her without her consent. (Id. ¶ 1.) These events were witnessed by a third person seated next to Oldham. (See id. ¶¶ 9, 53.) Upon returning home to North Carolina, Oldham shared the details of the sexual assault with her husband, Jeff Kallio. (Id. ¶ 36.)

Oldham sought advice about how to deal with the assault from her professional mentor and former fencing coach, Ed Korfanty. (Id. ¶ 37.) As a long-time friend of Defendant Glon, Penn State's fencing coach, Korfanty called him on January 15, 2018 to speak with him about the incident. (Id. ¶¶ 37, 38.) After that conversation, Glon allegedly spoke with Abashidze and formed a conspiracy to cover up the assault. (Id. ¶ 39.) Glon did not report the assault to Penn State's Title IX Coordinator or anyone else in the Penn State Athletic Department. (Id. ¶ 40.)

In February 2018, Glon and Abashidze travelled to Durham, North Carolina with the Penn State fencing team for a competition at Duke University. (Id. ¶ 41.) At that time, at Oldham's urging, Glon and Oldham met. (Id. ¶ 42; Doc 25. at 8.) During the meeting,

3

Oldham informed Glon of the details of the sexual assault and provided a written summary of the assault. (Doc. 1 ¶ 43.) Oldham then asked Glon if he was going to report the assault to Penn State, to which he replied, "no." (Id. ¶¶ 44, 45.) Glon went on to tell Oldham that it would be embarrassing for her if the assault became known and that no one would believe her claims against Abashidze. (Id. ¶ 46.) Glon then brought Abashidze into the conversation and directed him to apologize to Oldham, after which the meeting ended. (Id. ¶ 48.)

In April 2018, Oldham attended a USA Fencing North American Cup tournament in Richmond, Virginia. (Id. ¶ 52.) At that time, Korfanty asked her to speak with him and Glon over coffee. (Id.) During that meeting, Glon pressured Oldham not to engage in an ongoing investigation into the assault by SafeSport, an independent investigative agency.[2] (Id. ¶ 53.) Glon also reiterated that no one would believe Oldham's allegations and tried to impress upon her that Abashidze was a "good guy." (Id. ¶¶ 54, 55.) Oldham suggested that Glon had a duty to report the assault to Penn State, but Glon replied that he did not believe Abashidze was a "danger" to the team. (Id. ¶¶ 56, 57.)

In July 2018, Kallio emailed Penn State Athletic Director

---

[2] SafeSport is an independent organization focused on ending all forms of abuse in sports. (Id. ¶ 46 n.5.) SafeSport initiated an investigation into Oldham's assault based on a report by the third-party witness. (Id. ¶ 53.)

4

Sandy Barbour to discuss Oldham's assault. (Id. ¶ 70.) In response, Defendant Harris and Penn State Athletics Integrity Officer Robert Boland contacted Kallio by email and phone. (Id. ¶ 71.) According to Harris and Boland, Kallio's email was the first they had heard of the assault. (Id. ¶ 72.)

On August 14, 2018, Harris and others had a conference call with Oldham. (Id. ¶ 73.) During that call, Oldham informed them of Abashidze's assault and Glon's failure to report the assault. (Id.) After the call, Harris began an Affirmative Action Office ("AAO") investigation into these events. (Id. ¶ 74.)

Between August 2018 and February 2019, Oldham did not hear anything from Harris regarding the investigation. (Id. ¶ 75.) During that period, Oldham experienced harassment and retaliation, both through electronic mediums and at international fencing tournaments. (Id. ¶ 76.) This harassment was allegedly perpetuated by Abashidze's friends and supporters with the knowledge of Abashidze and Glon. (Id. ¶¶ 76, 77.)

In February 2019, Oldham contacted Penn State for an update on the investigation and was informed that it was ongoing. (Id. ¶ 78.) Shortly thereafter, Harris emailed the initial AAO determination to Oldham. (Id. ¶ 79.) The initial determination substantiated and admitted as true her factual allegations of assault and harassment, but also concluded that Abashidze had not violated any Penn State policy. (Id. ¶¶ 79, 80.) The

5

determination did not mention Glon's failure to report. (Id. ¶ 82.)

After that time, Oldham repeatedly tried to arrange a personal meeting with Harris at Penn State but was discouraged from doing so. (Id. ¶ 83.) Instead, she had a brief telephone call with Harris and others. (Id. ¶ 85.) During that call, Oldham communicated her thoughts and disagreements regarding the initial determination. (Id. ¶ 85.) Despite this conversation, the final AAO determination reached the same conclusions as the initial determination. (Id.)

The final AAO determination deferred making a final judgment until after a future and separate determination could be made by Boland's parallel Inter Collegiate Athletics ("ICA") investigation. (Id. ¶ 88.) Oldham was not asked to be involved in that investigation, nor was she given an opportunity to review or comment on the ICA report. (Id. ¶ 90.) Further, she was never given notice of that investigation's outcome or its impact on the AAO determination. (Id.) When Oldham called Penn State to ask about the outcome of the ICA investigation, Harris told her that the process was complete but that he could not share any further information. (Id. ¶ 91.) Harris suggested that Oldham look at Penn State's website to "figure out" what happened with Abashidze. (Id. ¶ 92.)

In April 2019, Oldham submitted to Penn State a written Title

6

IX complaint against Glon based on his failure to report. (Id. ¶ 93.) Oldham alleged that Glon had sexually harassed and discriminated against her at numerous points, including when he told her that no one would believe her claims, that she would be embarrassed if her assault became known, and that he was not going to report her claim. (Id.) Penn State never responded to this complaint. (Id. ¶ 94.)

In March 2020, the United States Department of Education Office of Civil Rights ("OCR") published a compliance review of sexual misconduct cases at Penn State from 2011 to 2020. (Id. ¶ 95.) Among OCR's findings was the conclusion that Penn State failed to respond promptly and equitably to complaints of sexual harassment. (Id.)

On May 27, 2020, Oldham filed the present complaint alleging seven causes of action against Defendants, collectively and individually, stemming from Oldham's assault and failures of Penn State's Title IX process relating to that assault. (Id.) Against all Defendants, she brings claims alleging violations of Title IX of the Education Amendments Of 1972, 20 U.S.C. § 1681 et seq., and civil conspiracy (deliberate indifference); violations of Title IX and civil conspiracy (erroneous outcome) in relation to her allegations against Abashidze; negligence/gross negligence; and negligent or intentional infliction of emotional distress. (Id. ¶¶ 100–61.) Against Glon, Harris, and Penn State, she alleges

7

violations of Title IX and civil conspiracy (erroneous outcome) in relation to her allegations against Glon as well as a failure to train and/or supervise employees regarding sexual misconduct claims. (Id.) Against Penn State and Abashidze, she brings a claim of battery. (Id.)

Beginning on July 27, 2020, the Defendants filed their current motions: Glon, Penn State, and Harris move to dismiss or, in the alternative, to transfer pursuant to 28 U.S.C. § 1404. (Docs. 22, 24.) Abashidze moves to dismiss pursuant to Rule 12(b)(2). (Doc. 31.) The motions are fully briefed and ready for resolution. (See Docs. 27, 29, 30, 34, 35.)

## II. ANALYSIS

Defendants each move to dismiss, in part, under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Three of the four defendants also move to dismiss for improper venue pursuant to Rule 12(b)(3). Although "there is no mandatory sequencing of jurisdictional issues," Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (internal quotation marks omitted), when faced with motions to dismiss based on both lack of personal jurisdiction and improper venue, courts typically address personal jurisdiction first. BSN Med., Inc. v. Am. Med. Prods., LLC, 3:11cv092-GCM-DSC, 2012 WL 171269, at *2 (W.D.N.C. Jan. 20, 2012). However, "the Supreme Court has held that 'when there is a sound prudential justification for doing so,

8

. . . a court may reverse the normal order of considering personal jurisdiction and venue.'" Id. (quoting Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979)); see also Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 n.3 (4th Cir. 2006) ("[A] district court has the discretion to dismiss on the basis of improper venue before reaching the issue of personal jurisdiction."). Where, as here, a plaintiff brings claims against multiple defendants, each of whom contests personal jurisdiction, over whom personal jurisdiction is doubtful, and where the court would need to reach the issue of venue regardless, courts have exercised their discretion to address venue first. See, e.g., Mylan Labs., Inc. v. Akzo, N.V., No. CIV. A. 89-1671, 1990 WL 58466, at *1 (D.D.C. Mar. 27, 1990) (considering venue prior to personal jurisdiction when eight defendants challenged personal jurisdiction); Boyd v. Koch Foods, No. 5:10-CV-349-D, 2011 WL 2413844, at *2-3 (E.D.N.C. June 10, 2011) (transferring venue without consideration of personal jurisdiction where jurisdiction over a corporate defendant was "in serious doubt"); Tyler v. Gaines Motor Lines, Inc., 245 F. Supp. 2d 730, 734 (D. Md. 2003) (exercising discretion to transfer on the basis of improper venue where the issue of personal jurisdiction was "a close one"); Datasouth Comput. Corp. v. Three Dimensional Techs., Inc., 719 F. Supp. 446, 450, 453 (W.D.N.C. 1989) (transferring venue without determining issues of personal jurisdiction where the

9

jurisdictional issues presented "a difficult question") (collecting cases). "A court need not have personal jurisdiction over a defendant to transfer a case pursuant to 28 U.S.C. §§ 1404(a) or 1406(a)." BSN Med., 2012 WL 171269, at *2; see also DEB USA, Inc. v. CWGC LA Inc., No. 316-CV-00521-MOC-DCK, 2017 WL 581328, at *4 (W.D.N.C. Feb. 13, 2017).

"When an objection to venue has been raised under Rule 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action." Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG, 26 F. Supp. 3d 496, 502 (M.D.N.C. 2014) (internal quotation marks omitted). "[I]n a case involving multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each defendant." Bartko v. Wheeler, No. 1:13CV1006, 2014 WL 29441, at *8 (M.D.N.C. Jan. 3, 2014), aff'd, 589 F. App'x 181 (4th Cir. 2015) (quoting Hickey v. St. Martin's Press, Inc., 978 F. Supp. 230, 240 (D. Md. 1997)). Absent an evidentiary hearing, a plaintiff need only make a *prima facie* showing that venue is proper. Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004). In making a venue determination, the court can consider evidence outside the pleadings and should view the facts in the light most favorable to the plaintiff. Turfworthy, 26 F. Supp. 3d at 502.

Under 28 U.S.C. § 1391(b), venue is proper in

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

In the event venue is improper in the district in which a case is filed, the district court retains discretion to dismiss or, if in the interest of justice, to transfer the case to any district in which it could have been brought. 28 U.S.C. § 1406(a). "[T]ransfer is generally considered to be more in the interest of justice than dismissal and, therefore, doubts should be resolved in favor of preserving the action, particularly where it appears that venue may be properly laid in the proposed transferee district." Blue Rhino Glob. Sourcing, Inc. v. Best Choice Prod., No. 1:17CV69, 2018 WL 4784006, at *3 (M.D.N.C. June 20, 2018) (internal quotations).

Oldham now has had an opportunity to directly address the propriety of venue in this district, as well as the prospect of transfer to the Middle District of Pennsylvania. After carefully reviewing the complaint and Oldham's responses to the present motion, the court concludes, for reasons detailed below, that venue is improper in this district and the court will therefore transfer

11

this action.

**A. Venue is not proper in this district**

Oldham claims that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because "a substantial part of the events . . . giving rise to Oldham's action occurred in the district, and/or more so than in any other single district." (Doc. 1 ¶ 21.) This argument is unavailing.

"In 1990, [the general federal venue statute] was amended to make venue proper in any 'judicial district in which a <u>substantial part</u> of the events or omissions giving rise to the claim occurred.'" <u>Mitrano</u>, 377 F.3d at 405 (quoting 28 U.S.C. § 1391) (emphasis added). The statute as amended makes it possible for venue to be proper in more than one judicial district. <u>Id.</u>; <u>see also</u> <u>Red Bull GmbH v. RLED, LLC</u>, 515 F. Supp. 2d 641, 646 (M.D.N.C. 2007) ("Substantial activities may occur in other districts without disqualifying this district as a proper venue, so long as 'substantial' activities occurred in this district also[,] . . . even if more substantial or the most substantial activities took place elsewhere." (internal citations omitted)).

While venue may be appropriate in multiple districts, district courts should "take seriously the adjective 'substantial.'" <u>Bartko</u>, 2014 WL 29441, at *9 (quoting <u>Gulf Ins. Co. v. Glasbrenner</u>, 417 F .3d 353, 356–57 (2d Cir. 2005)); <u>see also</u> <u>Jenkins Brick Co. v. Bremer</u>, 321 F.3d 1366, 1371 (11th Cir.

2003) ("The new language thus contemplates some cases in which venue will be proper in two or more districts. This does not mean, however, that the amended statute no longer emphasizes the importance of the place where the wrong has been committed. Rather, the statute merely . . . reduc[es] the degree of arbitrariness in close cases."). Determining an appropriate venue is a question of quality, not quantity. _N.C. Mut. Life Ins. Co. v. Stamford Brook Cap., LLC_, No. 1:16CV1174, 2019 WL 4747851, at *6 (M.D.N.C. Sept. 27, 2019). In evaluating the appropriateness of a given venue, courts review the entire sequence of events underlying a claim. _Mitrano_, 377 F.3d at 405. Ultimately, "what matters most is whether the material acts or omissions within the forum 'bear a close nexus to the claims.'" _Stamford Brook_, 2019 WL 4747851, at *6 (quoting _Daniel v. Am. Bd. of Emergency Med._, 428 F.3d 408, 433 (2d Cir. 2005)). "That means for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." _Bartko_, 2014 WL 29441, at *9 (quoting _Gulf Ins._, 417 F.3d at 357); _see also Setra of N. Am., Inc. v. Schar_, No. 1:03CV711, 2004 WL 1554195, at *8 (M.D.N.C. July 7, 2004) (unpublished) (recommendation of Eliason, M.J., adopted by Beaty, J.) ("Under the plain language of the venue statute, only events and omissions _giving rise_ to a claim are considered." (emphasis in original)).

13

Here, a small number of events relating to Oldham's claims took place in North Carolina. Beyond telephone calls and emails exchanged between Penn State officials in Pennsylvania and Oldham in North Carolina, the only event alleged to have occurred in North Carolina was a meeting between Oldham, Glon, and Abashidze in February 2018. At that time, allegedly at Oldham's request, Glon and Abashidze met with Oldham while they were in North Carolina for a fencing tournament at Duke University. This meeting occurred after Abashidze allegedly assaulted Oldham. It also occurred after Glon learned of the assault claim — and his duty to report arose — and after Glon and Abashidze allegedly formed a conspiracy to cover it up. However, the meeting occurred before Penn State was made aware of the assault allegation and before it began its investigation. In light of the entire series of events underlying Oldham's claims, this meeting is not enough to justify venue in the present venue.

At the center of all of Oldham's claims is the assault allegedly perpetrated by Abashidze and the failure of the responsible officials to properly act on Oldham's reports. In relation to these claims, the vast majority of underlying events did not occur in the Middle District of North Carolina. Rather, with the exception of the assault itself (which was perpetrated mid-flight over the Great Plains region), the substantial events alleged in this case occurred in Centre County, Pennsylvania, in

14

the Middle District of Pennsylvania. For example, Glon's initial failure to report Oldham's assault became actionable following his January 2018 phone call with Korfanty. At the time, Glon was in the Pennsylvania district. (Doc. 29 at 3, 4.) Similarly, the alleged conspiracy to cover-up the assault was formed between Glon and Abashidze in that district. (Doc. 22 at 12.) All of Penn State's investigations into Oldham's assault were conducted in the Pennsylvania district, and all of the related reports were produced there. (Id. at 12, 13.) Likewise, all of Defendants' alleged failures to sufficiently train coaching staff in Title IX procedures occurred in the Pennsylvania district. (Id.) In view of the entire course of events and the claims brought by Oldham, a single meeting in North Carolina, coupled with phone calls and emails incidental to Oldham's claims, do not justify venue in the Middle District of North Carolina.

Oldham argues that venue is appropriate in the Middle District of North Carolina because "the discriminatory impacts of [Defendants'] actions have [] occurred" here. (Doc. 27 at 25.) However, only the events giving rise to a claim may justify venue, not impacts felt by a plaintiff after an action accrues. See Taylor v. City & Cnty. of Honolulu, No. 7:16-CV-410-D, 2017 WL 3526660, at *3 (E.D.N.C. Aug. 16, 2017) (seeking medical care after an accident in a given district not sufficient to establish proper venue); Apr. Ademiluyi v. Nat'l Bar Ass'n, No. GJH-15-02947, 2016

15

WL 4705536, at *3 (D. Md. Sept. 8, 2016) (feeling "all the injuries" from defendants' actions in a given district not sufficient to establish proper venue); Massi v. Lomonaco, No. C/A0:10-265-CMC-PJG, 2010 WL 2429313, at *1 (D.S.C. May 25, 2010), report and recommendation adopted, No. C/A0:10CV-265CMC-PJG, 2010 WL 2429234 (D.S.C. June 11, 2010) ("Any argument that [plaintiff] has suffered monetarily in this district from [defendant's actions] is insufficient to confer venue in [this district] . . . because otherwise venue almost always would be proper at the place of the plaintiff's residence."); see also McClintock v. Sch. Bd. E. Feliciana Par., 299 Fed. App'x 363, 365 (5th Cir. 2008) ("Venue [] cannot lie simply because a plaintiff continues to experience the psychological effects of an injury in a particular place."). As such, the discriminatory impacts of Defendants' actions felt by Oldham in this district cannot justify venue here.

Oldham further characterizes the February 2018 meeting as an instance of sexual harassment and gender-based discrimination perpetrated by Glon against her. As Defendants suggest, this is a legal conclusion. However, even accepting that claim as true, this would make venue appropriate solely over any Title IX claims Oldham brings against Glon as well as related claims against Penn State for failure to properly investigate. Oldham has not established how this meeting in North Carolina would make venue

16

appropriate in relation to her battery claim against Abashidze or her associated Title IX-based deliberate indifference, erroneous outcome, and failure to train claims, nor her negligence and negligent or intentional infliction of emotional distress claims brought against Defendants other than Glon.

Put another way, "[a]lthough § 1391 no longer requires the court to identify the single best venue for a plaintiff's claim[s]," in this case the connections of Oldham's claims to the Middle District of Pennsylvania "so far predominate over those in [this district] as to make it impossible to conclude that a 'substantial part of the events or omissions giving rise to the claim[s]' occurred in this district." MTGLQ Invr's, L.P. v. Guire, 286 F. Supp. 2d 561, 566 (D. Md. 2003) (internal citation omitted); see also Daniel, 428 F.3d at 434 (finding venue lacking where the "[p]laintiffs allege[d] a series of actions by [the] defendants ... [and] the vast majority of these acts occurred outside" the district in which the plaintiffs filed the case). A more appropriate venue for Oldham's claims is the Middle District of Pennsylvania.[3] Not only is venue proper there under § 1391(a)(1) because all Defendants reside in the Middle District of Pennsylvania, but also because the bulk of the witnesses to Oldham's sexual harassment and discrimination claims, as well as

---

[3] The court expresses no opinion as to whether other districts might also be proper venues.

17

the witnesses who can testify as to Penn State's investigations into those claims, are located there.

**B.   Appropriateness of transfer**

As provided by § 1406(a), a case brought in an improper venue may be "dismiss[ed], or if it be in the interest of justice, transfer[red] . . . to any district or division in which it could have been brought.'" 28 U.S.C. § 1406(a).  The analysis of whether a transfer is in the interest of justice is the same under both 28 U.S.C. § 1404(a) and § 1406(a).  Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 n. 5 (4th Cir. 1993).  Accordingly, this court will look to § 1404(a) to determine whether transfer is appropriate.

In order to transfer venue pursuant to § 1404(a), the transferee district must first be determined to be a district where the action initially may have been brought.  The Middle District of Pennsylvania meets this requirement.  As discussed above, all Defendants reside in Pennsylvania and do not contest personal jurisdiction in that forum.  Further, the bulk of the substantial events underlying Oldham's claims occurred in that district.

In determining whether transfer is appropriate, the court must next consider the "convenience and fairness" of such a transfer.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  In so doing, the court has broad discretion, see Nichols, 991 F.2d 1195, and weighs the following factors:

18

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

Dillon v. BMO Harris Bank, N.A., 16 F. Supp. 3d 605, 617 (M.D.N.C. 2014) (citation omitted).[4]   As a general rule, "unless the balancing of these factors weighs strongly in favor of the defendant, the plaintiff's choice of forum [] should not be disturbed." Casana Furniture Co., Ltd. v. Coaster Co. of Am., No. 1:08CV744, 2009 WL 783399, at *2 (M.D.N.C. Mar. 24, 2009) (quoting Brown v. Flowers, 297 F. Supp. 2d 846, 850 (M.D.N.C. 2003)); Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984). Moreover, "[w]hile a district court has discretion to transfer the

---

[4] The Fourth Circuit has enunciated a similar, but shorter test listing the following four factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trs. Of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015). These factors are inherently or expressly incorporated into the more expansive test applied by district courts in this circuit. See Triangle Grading & Paving, Inc. v. Rhino Servs., LLC, No. 1:19CV486, 2020 WL 2086188, at *16 n.17 (M.D.N.C. Apr. 30, 2020) (collecting cases); see also Hunter v. Mountain Com. Bank, No. 1:15CV1050, 2016 WL 5415761, at *9 (M.D.N.C. Sept. 28, 2016).

action to a more appropriate venue, a court should not transfer venue where doing so would only shift the inconvenience to another party." Casana, 2009 WL 783399, at *2.

As this court has already determined that Oldham's choice of forum is not an appropriate venue, the court will give it little weight. See Alvarez v. Babik, No. 1:13-CV-252, 2014 WL 1123383, at *3 (N.D. W. Va. Mar. 21, 2014); see also Parham v. Weave Corp., 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004) (explaining that although the plaintiff's choice of forum is ordinarily given considerable weight, that weight is diminished when the conduct giving rise to the complaint did not occur in the forum).

The remaining relevant factors weigh largely in favor of transfer. First, the Middle District of Pennsylvania has greater ease of access to witnesses. As discussed above, the vast majority of the witnesses to Oldham's sexual harassment and discrimination claims, as well as the witnesses to Penn State's investigation into those claims, are located in Pennsylvania. Additionally, the sole third-party witness to Abashidze's assault on Oldham resides in New Jersey, making the Middle District of Pennsylvania — which partially borders New Jersey — a significantly more convenient forum for that witness. As all Defendants are located in Pennsylvania, that forum is also significantly more accessible for

most of the parties involved.[5]  While Oldham asserts that a number of key witnesses reside in North Carolina, those witnesses — with the exception of Oldham and Kallio — have knowledge only of the impact of these events on Oldham, rather than knowledge of the events themselves.  (See Doc. 27 at 28.)  As such, the court finds that the Middle District of Pennsylvania has greater ease of access to the key witnesses in this case.

Second, as most witnesses are located in Pennsylvania, that court also is better situated to exercise compulsory process over unwilling witnesses in this case.  By that same merit, the cost of obtaining attendance of witnesses in that forum is notably less burdensome.  Third, the Middle District of Pennsylvania is able to impose an enforceable judgment on Defendants because they are each subject to personal jurisdiction in that court.

Finally, the local interest in having localized controversies settled at home weighs in favor of transfer.  "Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events." Speed Trac Techs., Inc. v. Estes Express Lines, Inc., 567 F. Supp. 2d 799, 804 (M.D.N.C. 2008); Weishaupt v. Boston Coll., No. 1:11-cv-1122, 2012 WL 1439030, at *5 (M.D.N.C. Apr. 24,

---

[5]  Although the Middle District of Pennsylvania is admittedly less convenient for Oldham, as her first choice and most convenient forum is not an appropriate venue, this cannot be helped.

21

2012). If acts or omissions primarily occurred in one state, that forum should resolve the dispute, even if the harm occurred elsewhere. See Triangle Grading & Paving, Inc. v. Rhino Servs., LLC, No. 1:19CV486, 2020 WL 2086188, at *18 (M.D.N.C. Apr. 30, 2020); Weishaupt, 2012 WL 1439030, at *5. Here, the alleged wrongful acts occurred primarily in the Middle District of Pennsylvania, and all of the acts are alleged to have been committed by individuals and entities associated with the Commonwealth of Pennsylvania. In light of this, the local interest in resolving the case is significant.

However, at least one factor does not weigh in favor of transfer. Specifically, as Oldham has brought several North Carolina tort claims alongside her federal claims, the Middle District of Pennsylvania is not "at home with the state law" governing those claims. However, the claims and issues brought under federal law in this action largely outweigh those brought under North Carolina law. There is also no reason to believe that the federal court in Pennsylvania cannot apply general North Carolina tort law, if that law is applicable. As the other relevant factors weigh heavily in favor of transfer, Oldham's North Carolina tort claims do not disturb that balance.

It is in the interest of justice for Oldham to have her day in court. There is no reason why the matter should be dismissed rather than transferred. Thus, the court finds that it is more

appropriate to transfer Oldham's claims to the Middle District of Pennsylvania rather than to dismiss, as Defendants request. See Carolina Archery Prod., Inc. v. Alpine Archery Inc., No. 1:03 CV 00176, 2004 WL 1368863, at *9 (M.D.N.C. June 15, 2004) (transferring case because it was "in the interest of justice for plaintiffs to have their day in court" and there were no "countervailing reasons to deny transfer"); see also Davis Media Grp. v. Best W. Int'l, 302 F. Supp. 2d 464, 470 (D. Md. 2004) ("In addressing the issue of proper venue in the context of a possible dismissal of the action, the usual procedure should be transfer rather than dismissal." (internal quotation marks omitted)). In light of the lack of venue over the claims against Penn State, Harris, and Glon in the Middle District of North Carolina, the court will transfer the claims against them to the Middle District of Pennsylvania pursuant to § 1406(a).

### C. Venue over claims against Abashidze

Unlike Defendants Penn State, Harris, and Glon, Abashidze has not contested venue in his motion to dismiss pursuant to Rule 12(b)(2). As such, the court must consider whether transferring the claims against him is appropriate.

Venue is considered a "personal privilege[] of the defendant, rather than [an] absolute stricture[] on the court." Leroy, 443 U.S. at 180. A defendant, therefore, may waive his privilege to demand a proper venue if he does not make a "timely and sufficient

23

objection." See 28 U.S.C. § 1406(b). Under Rule 12(b) of the Federal Rules of Civil Procedure, "[e]very defense to a claim for relief . . . must be asserted in the responsive pleading if one is required," but certain defenses, including the defense of improper venue, may be asserted by motion. Fed. R. Civ. P. 12(b). "As a general rule, a defendant waives its right to challenge venue if it fails to do so either in a responsive pleading or in the first Rule 12 motion filed before a responsive pleading." Blue Rhino, 2018 WL 4784006, at *2 (citing Rules 12(b) and 12(h)(1)).

In this case, as Abashidze did not raise the issue of venue in his Rule 12(b) motion, he is considered to have waived that objection and to have accepted venue in this court. He does contest this court's exercise of personal jurisdiction over him. But that issue is moot if the court exercises its discretion to also transfer the claims against Abashidze to the Pennsylvania federal court. See BSN Med., 2012 WL 171269, at *2 ("A court need not have personal jurisdiction over a defendant to transfer a case pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).").

"[W]hen venue is proper for one defendant but not for another, and dismissal is inappropriate, the [c]ourt can either (1) 'transfer the entire case to another district that is proper for both defendants,' or (2) 'sever the claims, retaining jurisdiction over one defendant and transferring the case as to the other defendant to an appropriate district.'" Gore v. Air & Liquid Sys.

24

<u>Inc.</u>, No. 1:15-cv-465, 2016 WL 11680149, at *4 (M.D.N.C. June 21, 2016) (quoting <u>Cottman Transmission Sys., Inc. v. Martino</u>, 36 F.3d 291, 296 (3d Cir. 1994)). The court "should not sever if the defendant over whom jurisdiction is retained" — even if that defendant has waived its objection to venue — "is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." <u>Id.</u> Here, Abashidze is a central figure in Oldham's claims, and the court's consideration of the claims against him when the rest of the action is transferred to the Middle District of Pennsylvania could result in multiple proceedings involving many of the same issues and witnesses. Such duplicative, piecemeal litigation is contrary to notions of judicial economy and efficiency. In the interest of justice, the court will transfer the claims against Abashidze to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). <u>See</u> <u>Feller v. Brock</u>, 802 F.2d 722, 729 n.7 (4th Cir. 1986) (stating that a district court may sua sponte consider transfer pursuant to § 1404(a)). This results in transfer of the entire action to the Middle District of Pennsylvania.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that the motions to transfer venue by Defendants Penn State, Harris, and Glon (Docs. 22, 24) are GRANTED, and the action shall be TRANSFERRED to the United States District

25

Court for the Middle District of Pennsylvania.  Defendants' motions to dismiss (Docs. 22, 24, 31) are DENIED as MOOT.  The Clerk of Court is directed to close this file.

                                    /s/    Thomas D. Schroeder
                              United States District Judge

December 16, 2020